UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KRAPE, S.A.,                                    :
                                                :
                              Plaintiff,        :
                                                :        REPORT AND
              -against-                         :        RECOMMENDATION
                                                :
                                                :        No. 21-CV-03742-AMD-JRC
LIK SUPPLY, CORP.,                              :
                                                :
                              Defendant.        :
------------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

Plaintiff KRAPE, S.A. ("KRAPE" or "plaintiff") brings this breach of contract action

pursuant to the United Nations Convention on Contracts for the International Sale of Goods

("CISG") against LIK Supply, Corp. ("LIK Supply" or "defendant"), alleging that LIK Supply

breached the parties' purchase-and-sale agreements by failing to deliver goods that plaintiff

ordered and purchased.  *See* Compl., Dkt. 1; Plaintiff's Mem. of Law in Supp. of Mot for Default

J., Dkt. 12 ("Pl.'s Mem.").  Upon plaintiff's application and in light of defendant's failure to

appear in or otherwise defend this action, the Clerk of the Court entered defendant's default on

October 8, 2021.  Dkt. 10.  Plaintiff now moves for default judgment and seeks reimbursement of

payments for unfulfilled orders, lost profits, and interest.  *See generally* Mot. for Default J., Dkt.

11; Pl.'s Mem., Dkt. 12.  On November 23, 2021, the Honorable Ann M. Donnelly referred

plaintiff's motion to this Court for a report and recommendation.  For the reasons set forth

below, this Court respectfully recommends granting in part plaintiff's motion.

## I.     Relevant Factual and Procedural Background

The following facts are drawn from plaintiff's Complaint and are accepted as true for

purposes of this motion.

Plaintiff is a Spanish corporation with its principal place of business in Madrid, Spain. Compl. ¶ 2.  Plaintiff is an international distributor and provider of medical, dental, and sanitary instruments, devices, and equipment to hospitals, nursing homes, clinics, and laboratories.  *Id*. Defendant is a New York corporation with its principal place of business in Kew Gardens, New York.  *Id*. ¶ 3.  Defendant is a distributor and supplier of medical and dental instruments, equipment, and other products.  *Id*.[1]

In and around April and May 2020, plaintiff and defendant entered into a series of agreements for the purchase and sale of nitrile and vinyl gloves (the "Agreements").  *Id*. ¶ 6; *see also* Ex. A, Dkt. 1 at ECF pages[2] 7-14.  Under the Agreements, plaintiff agreed to pay defendant in advance either 50% or 100% of the respective purchase price, with any remaining balance to be paid on delivery of the goods, in exchange for defendant delivering the purchased goods within a specified time range.  *Id*. ¶¶ 7-8.

Plaintiff promptly remitted the requisite payments to defendant in connection with each of the Agreements, totaling an aggregate amount of $990,455.  *Id*. ¶ 9.  Plaintiff's first payment was made on April 16, 2020, and its final payment was made on May 11, 2020.  *Id*.  Despite plaintiff satisfying its obligation under the Agreements, defendant did not and has not delivered the goods ordered and paid for by plaintiff.  *Id*. ¶ 12.  As a result of defendant's failure to deliver the purchased goods, plaintiff was unable to fulfill an order of nitrile gloves placed by one of plaintiff's own customers, and thus lost profits on that order.  *Id*. ¶ 19.

---

[1] As this matter is between a citizen of Spain and a citizen of New York (specifically, residing in Queens County), and the amount in controversy exceeds $75,000, this Court has jurisdiction over this matter and venue is proper.
[2] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

In acknowledgment of its breach, defendant applied $147,957.68 of plaintiff's payments to subsequent purchase orders in or around July 2020, which defendant subsequently fulfilled. *See id*. ¶ 13.  In addition, in or around September 2020, defendant refunded plaintiff $180,987.22 from the amount plaintiff had paid on the unfulfilled Agreements. *Id*. ¶ 14.  Accounting for the applied credit and partial refund, a total of $661,510.10 remains unreimbursed by defendant in connection with the unfulfilled Agreements. *Id*. ¶ 15.  Though plaintiff sent defendant a letter demanding return of the unreimbursed monies on April 30, 2021, defendant has refused to return the remaining funds. *Id*. ¶¶ 16-17; *see* Ex. B, Dkt. 1 at ECF pages 16-17.

Plaintiff filed the Complaint in this Court on July 2, 2021, alleging that defendant breached its contracts with plaintiff, and that plaintiff was thus entitled to damages, including lost profits and prejudgment interest. *Id*. ¶¶ 19-23, Wherefore Clause.  Defendant was served on July 7, 2021.  Dkt. 6.  On October 8, 2021, the Clerk entered a Certificate of Default as to defendant.  Dkt. 10.  On November 22, 2021, plaintiff moved for a default judgment.  Dkt. 11.  Plaintiff has submitted records of communications with defendant demonstrating the defendant is aware of this action and has made the affirmative decision not to appear.  *See* Ex. D, Dkt. 13-4 (email chain from July 26, 2021 through September 29, 2021 between plaintiff's counsel and defendant discussing complaint and defendant's continued failure to respond); Dkt. 20 (email on January 11, 2022 between plaintiff's counsel and defendant in which defendant states "if [] possible make motions without us").

## II.    Discussion

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55(a).  When evaluating a plaintiff's application for a default judgment, "a court is required to

accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

### A.    Choice of Law

As an initial matter, the Court must determine what law to apply to plaintiff's breach of contract claim. *See D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015). Although plaintiff's Complaint does not specify the governing law under which the breach of contract is claimed, plaintiff argues that the CISG should apply. *See* Pl.'s Mem. at 5-6.

The Court recognizes that "[f]or international contracts for the sale of goods between U.S. parties and foreign parties . . . concluded on or after 1 January 1989, the applicable commercial law is not the U.C.C., but rather, the [CISG] . . . unless the parties expressly contract out of the Convention's coverage." *Orbisphere Corp. v. United States,* 726 F. Supp. 1344, 1355 n.7 (Ct. Int'l Trade 1989). Moreover, the CISG is self-executing, and if the agreement is "silent as to choice of law, the [CISG] applies if both parties are located in signatory nations." *Delchi Carrier SpA v. Rotorex Corp.,* 71 F.3d 1024, 1027 n.1 (2d Cir. 1995). While the U.C.C. may "inform a court where the language of the relevant CISG provisions tracks that of the U.C.C.[,] U.C.C. case law is not *per se* applicable" to all sale of goods contract disputes. *Genpharm Inc. v. Pliva–Lachema A.S.,* 361 F. Supp. 2d 49, 55 (E.D.N.Y. 2005).

4

While there are few cases discussing claims arising under the CISG, the available case law establishes that federal district courts have authority to interpret the CISG. *See, e.g., Genpharm,* 361 F. Supp. 2d at 54-55 (noting that "[t]here are only a handful of American cases interpreting the CISG," but finding that a dispute "involv[ing] an agreement to supply goods . . . falls within this Court's treaty jurisdiction, and this Court's subject matter jurisdiction"); *Hanwha Corp. v. Cedar Petrochemicals, Inc.,* 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011) ("As a treaty, the CISG is a source of federal law.").

Here, plaintiff alleges that both parties are members of CISG signatory nations -- Spain and the United States. *See* Pl.'s Mem. at 5-6. In addition, the Court notes that the Agreements are silent as to choice of law. *See* Ex. A, Dkt. 1 at ECF pages 7-14. These facts stand uncontroverted. Accordingly, this Court recommends finding that the CISG applies to the Agreements and will evaluate plaintiff's breach of contract claim under the CISG.

### B.    Breach of Contract

"Because case law interpreting the CISG is relatively sparse, th[e] Court is authorized to interpret it in accordance with its general principles, with a view towards the need to promote uniformity in its application and the observance of good faith in international trade." *Hanwha Corp.*, 760 F. Supp. 2d at 430 (quoting *Delchi Carrier,* 71 F.3d at 1028) (internal quotations omitted). Under the CISG, if a delivery "date is fixed by or determinable from the contract . . . [t]he seller must deliver the goods . . . on that date." United Nations Convention on Contracts for the International Sale of Goods art. 33, Apr. 11, 1980, 1489 U.N.T.S. 3 [hereinafter CISG]. "If a period of time [for delivery] is fixed by or determinable from the contract . . . [t]he seller must deliver the goods . . . at any time within that period unless circumstances indicate that the buyer is to choose a date." *Id.* "In any other case . . . [t]he seller must deliver the goods . . . within a

reasonable time after the conclusion of the contract." *Id*. In addition, Articles 53 and 54 of the CISG mandate that a buyer must pay the prices of the goods in the manner provided by the contract. *See id.* arts. 53-54.

Here, the Complaint establishes that an enforceable contract was formed between plaintiff and defendant, who are both citizens of CISG signatory countries. The Agreements between the parties set (1) the quantity, quality, type and price of the goods to be delivered to plaintiff; (2) the amount paid by plaintiff in advance and the amount due upon delivery of the goods; and (3) the date or time range by which defendant would deliver the goods to plaintiff. *See* Compl. ¶¶ 6-8; Ex. A, Dkt 1 at ECF pages 7-14. Though plaintiff performed its payment obligations under the Agreements, defendant failed to deliver the goods. Compl. ¶¶ 9-12.

Accordingly, plaintiff has adequately alleged that the parties formed enforceable contracts governed by the CISG, plaintiff satisfied its obligations under the contracts, and defendant failed to perform under the contracts. Because plaintiff has pled the elements of a breach of contract claim under the CISG, this Court respectfully recommends granting plaintiff's motion for default judgment against defendant.

## C. Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40

(2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing

or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2);

*Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July

12, 2019) (holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was

a basis for the damages specified in the default judgment" (alterations in original) (internal

quotations omitted)); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits

and documentary evidence as the basis for determining damages to be awarded in a default

judgment).

Plaintiff has submitted in support of its motion two declarations of Jose Santos Ruiz, the

Director and Administrator of KRAPE, S.A.  *See* Declaration of Jose Santos Ruiz in Supp. of

Mot. for Entry of Default J., Dkt. 14 ("Ruiz Decl.") ¶ 1; Supplemental Declaration of Jose Santos

Ruiz ("Suppl. Ruiz Decl."), Dkt. 25.  The declarations detail the amount that plaintiff paid in

advance for the goods, the amount defendant refunded for the undelivered goods, and the amount

of profits plaintiff lost from the customer order it could not fulfill as a result of the breach.  *See*

Ruiz Decl. ¶¶ 6-23.  Plaintiff also submits copies of the unfulfilled Agreements, wire transfer

records demonstrating that plaintiff paid for the undelivered goods in advance, and the affected

purchase order of plaintiff's customer that plaintiff was unable to fulfill.  *See* Ruiz Decl. Exs. A-

C, Dkts. 14-1, 14-2, 14-3.  Based on the supporting declaration and exhibits, plaintiff seeks a

total of $919,252.10 in damages, which includes: (1) $661,510.10 in unreimbursed funds; and (2)

$257,742.00 in lost profits.  *See* Ruiz Decl.  Plaintiff also seeks prejudgment interest at the

statutory rate.  Pl.'s Mem. at 9.  Defendant has not submitted any opposition.

Accordingly, and for the reasons set forth below, this Court concludes that a hearing on the issue of damages is unwarranted and respectfully recommends that plaintiffs be awarded the relief calculated below.

### 1.    Unreimbursed Payments and Lost Profits

Pursuant to the breach of contract claim arising under the CISG, plaintiff seeks recovery for its actual loss and lost profits.  The CISG states that where a seller fails to perform any of his obligations under a contract, the buyer may pursue an award for damages.  *See* CISG art. 45(1)(b).

> Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

CISG art. 74.  This provision is "designed to place the aggrieved party in as good a position as if the other party had properly performed the contract."  *Delchi Carrier*, 71 F.3d at 1029 (internal quotations and citations omitted).

Plaintiff has presented proof of the following: (1) an April 15, 2020 wire payment to defendant in the amount of $235,815.00, Dkt. 14-2 at ECF page 1, which corresponds to the amount due on the contract dated April 15, 2020, Dkt. 14-1 at ECF page 2; (2) a May 7, 2020 wire payment to defendant in the amount of $371,840.00, Dkt. 14-2 at ECF pages 2-3, which corresponds to the amount due on the contracts dated May 6, 2020 and May 7, 2020 ($129,920.00 + $129,920.00 + $112,000.00), Dkt. 14-1 at ECF pages 3-4, 6; and (3) a May 11, 2020 wire payment to defendant in the amount of $382,800.00, Dkt. 14-2 at ECF pages 4-5, which corresponds to the amount due on the contracts dated May 9, 2020 ($95,700.00 × 4), Dkt. 14-1 at ECF pages 5, 7-9.  These wire payments from plaintiff to defendant total $990,455.00.  In

addition, plaintiff affirms that the defendant never delivered the goods, that defendant credited $147,957.68 of the money paid by plaintiff to subsequent fulfilled orders, and that defendant reimbursed plaintiff in the amount of $180,987.22.  Ruiz Decl. ¶¶ 12-14.  As a result, a total of $661,510.10 ($990,455.00 - $147,957.68 - $180,987.22) remains unreimbursed for the unfulfilled Agreements.  *Id*. ¶ 15.  Plaintiff has also submitted copies of a letter and email chain demonstrating that plaintiff has demanded that defendant reimburse the remaining funds, that defendant has acknowledged that they need to "return the money," and that defendant has failed to do so.  *See* Dkt. 1 at ECF pages 16-17 (demand letter dated April 30, 2021); Dkt 13-4 (email chain between plaintiff's counsel and defendant spanning from July 26, 2021 to September 29, 2021).

Accordingly, this Court respectfully recommends awarding plaintiff **$661,510.10**, representing the loss incurred by plaintiff in paying for the undelivered goods.  *See Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-CV-4358, 2014 WL 2169769, at *7, *9 (E.D.N.Y. May 23, 2014) (awarding the loss incurred as a result of payment for goods in case governed by CISG).

In addition, plaintiff seeks recovery for lost profits because plaintiff was unable to fulfill business obligations to a third-party customer as a result of defendant's breach.  *See* Compl. ¶ 19; Ruiz Decl. ¶¶ 19-23.  Plaintiff claims that because plaintiff was unable to fulfill a purchase order from its customer, plaintiff suffered lost profits of $257,742.  *See* Ruiz Decl. ¶ 22.

"The CISG requires that damages be limited by the familiar principle of foreseeability established in *Hadley v. Baxendale,* 156 Eng. Rep. 145 (1854)."  *Delchi Carrier,* 71 F.3d at 1029.  Based upon the facts alleged here, where plaintiff is in the business of purchasing and reselling medical products, it was foreseeable that the gloves ordered from defendant were

expected to be resold to consumers at the time of contract formation, entitling plaintiff to lost profits. *See Profi-Parkiet Sp. Zoo*, 2014 WL 2169769, at *7, *9 (finding lost profits foreseeable in case governed by CISG where plaintiff, a supplier of wood products, bought raw products from defendant with the intent to resell); *see also St. Paul Commodities, LLC v. Island Biofuel, LLC*, No. 12-CV-3108, 2013 WL 3874447, at *9 (E.D.N.Y. July 25, 2013) ("lost profits are generally available to resellers or brokers"); *RIJ Pharm. Corp. v. Ivax Pharm., Inc.,* 322 F. Supp. 2d 406, 415 (S.D.N.Y.2004) (noting that "consequential damages for lost profits are recoverable where the buyer is a reseller or a broker"); *Canusa Corp. v. A & R Lobosco, Inc.,* 986 F. Supp. 723, 731 (E.D.N.Y.1997) ("When the aggrieved buyer is in the business of reselling the breaching seller's goods, the buyer may recover the lost profits as consequential damages . . . consequential damages for lost profits are recoverable where the buyer is a reseller or a broker.").

    In addition, plaintiff has sufficiently demonstrated that the alleged loss is capable of proof with reasonable certainty and that the loss was due to the breach.  The cancelled purchase order filed by plaintiff accurately reflects that a customer order was placed on August 26, 2020 for 13.5 million nitrile gloves, and the fact that defendant failed to deliver numerous orders of nitrile gloves in the months preceding this order sufficiently demonstrates that defendant's breach prevented plaintiff from fulfilling this order.  *See* Ruiz Decl. ¶ 20

    In support of its lost profits calculations, plaintiff has provided sufficient records to calculate the difference between the total price plaintiff would have paid for the gloves if the orders had been fulfilled and the total price at which plaintiff would have sold the gloves to its customers.  *See* Ruiz Decl. ¶ 22 and Ex. C, Dkt. 14-3.  In addition, though the "the standard formula to calculate lost profits is 'to deduct [] variable costs from sales revenue . . . because [ ]

fixed costs would have been encountered whether or not the breach occurred,'" *TeeVee Toons, Inc. v. Gerhard Schubert GmbH,* No. 00 Civ. 5189, 2006 WL 2463537, at *12 (S.D.N.Y. Aug. 23, 2006) (quoting *Delchi Carrier,* 71 F.3d 1024 at 1030), plaintiff affirms that "because the delivery was to a local customer, [variable] costs would have been *de minimis,* less than $100." Suppl. Ruiz Decl. ¶ 3.

Accordingly, this Court respectfully recommends granting plaintiff's request for lost profits in the amount of **$257,742**.

## 2.    Prejudgment Interest

The CISG provides that "[i]f a party fails to pay the price or any other sum that is in arrears, the other party is entitled to interest on it, without prejudice to any claim for damages recoverable under article 74."  CISG art. 78.  Because defendant failed to reimburse plaintiff for the undelivered goods, plaintiff is entitled to prejudgment interest.  *See Delchi Carrier,* 71 F.3d at 1027 (affirming award of prejudgment interest under CISG article 78).  As the Court in *Profi-Parkiet* noted:

> Article 78 does not specify the rate of interest to be applied or how the rate should be determined; . . . [and] because there is no single approach used by all courts and the [plaintiff has] failed to address the interest issue or provide information necessary to 'customize' a rate, this [C]ourt will award interest according to the principles used by federal courts in determining choice of law issues.

2014 WL 2169769, at *9 (citation omitted).  "While New York law provides for a 9 percent annual rate of interest, *see* N.Y.C.P.L.R. § 5004, when a judgment is based on violations of both federal and state law, courts in this circuit uniformly have applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills [ ] for . . . the relevant time period between the time plaintiff's claims arose . . . until the entry of judgment."  *Liberty*

11

*Media Corp., LMC v. Vivendi Universal, S.A.,* No. 03 Civ. 2175, 2013 WL 105776, at *4 (S.D.N.Y. Jan. 9, 2013).

Accordingly, although plaintiff requests prejudgment interest at New York's 9 percent rate, this Court respectfully recommends awarding prejudgment interest on plaintiff's unreimbursed payments ($661,510.10), from June 1, 2020, the final delivery date in the Agreements, to the date judgment is entered; and prejudgment interest on plaintiff's lost profits ($257,742), from August 26, 2020, the date of the unfulfilled customer purchase order, to the date judgment is entered, using the average rate of return on one-year Treasury bills, compounded annually.

## Conclusion

For the reasons stated above, this Court respectfully recommends that plaintiff's motion for default judgment be granted in part and that the plaintiff be awarded **$919,252.10** for breach of contract, with prejudgment interest awarded based on the federal interest rate.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendant, and to file proof of service on ECF by **September 19, 2022**.

Any objections to the recommendations made in this Report must be filed with the Honorable Ann M. Donnelly within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 29, 2022**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health &*

*Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
        September 15, 2022

                                    s/ James R. Cho
                                    James R. Cho
                                    United States Magistrate Judge